[No. 18234.  *En Banc.*  July 17, 1924.]

# FRANK VIZZARO, *Respondent*, v. KING COUNTY *et al.*, *Appellants*.[1]

BRIDGES (3)—COUNTIES (58)—TORTS—LIABILITY FOR DEFECTIVE BRIDGE ON BOUNDARY LINE. A county is liable for personal injuries sustained through the defective condition of an approach to a bridge over a boundary line stream, where the county built the bridge and both approaches and maintained the approach within the limits of the town, and assumed the duty of erecting barriers and protecting both approaches without consultation with, or co-operation of, the town authorities.

BRIDGES (3)—HIGHWAYS (66)—LIABILITY FOR DEFECTS—COUNTIES AND TOWNS—BOUNDARY LINE BRIDGE. Where the approaches on both sides of a boundary line bridge or culvert were washed out through insufficient capacity of the culvert to care for flood waters, and the bridge was the connection between a town street and a county highway, both the town and the county are liable for negligence in the maintenance of the approaches, on the principle that the defect was at the boundary line at a point common to both the town and county.

SAME. In such a case, the town cannot escape its legal liability to travelers by the fact that the county built and maintained the bridge and both approaches and assumed sole control and responsibility in keeping up repairs and erecting barriers, etc.

TRIAL (13)—VIEW OF PREMISES. It is within the discretion of the trial judge to allow the jury to view the scene of an accident in an action for personal injuries sustained on a highway.

SAME (55-2)—CONDUCT OF COUNSEL—CORRECTION OF OBJECTIONABLE MATTER. Objectionable portions of counsel's opening statement to the jury may be corrected by then instructirg the jury that it was not to be regarded as testimony.

APPEAL (386) — REVIEW — PARTIES ENTITLED — ACQUIESCENCE IN ERROR. Where appellants did not oppose a motion to strike the evidence of a witness who violated the rule as to exclusion from the court room, and no exception was taken to the order striking the evidence, the error is waived.

DAMAGES (80)—EXCESSIVE DAMAGES. A verdict for $10,000, for personal injuries sustained through a defect in an approach to a

[1]Reported in 227 Pac. 497.

bridge, will not be held excessive, where plaintiff was terribly mangled, many bones were broken, and he suffered permanent disfigurement about the face, including his nose, mouth and jaws and was permanently disabled.

Appeal from a judgment of the superior court for King county, French, J., entered January 24, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through a defective approach to a bridge. Affirmed.

*Malcolm Douglas, Howard A. Hanson,* and *Ewing D. Colvin,* for appellant King County.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for appellant Town of Issaquah.

*G. F. Vanderveer,* for respondent.

TOLMAN, J.—This is an appeal by the defendants from a verdict against them in the sum of $10,000, and a judgment thereon in an action to recover for personal injuries.

The town of Issaquah is bounded on the north by Issaquah creek, across which, at the point where the county highway enters the town from the north, there was a concrete culvert or bridge, admittedly constructed by King county, consisting of two concrete abutments, one on either side, spanned by a concrete floor, forming a roadway. The approaches on each side were backfilled with earth, so that the whole made a level roadway, in effect the same as though no culvert existed. To the south of the culvert, the road was a public street of the town of Issaquah, and to the north it was an unnamed county road.

On January 12, 1921, during a time of high water, the culvert, apparently proving insufficient in capacity, the waters of the stream cut through the highway outside of the abutments both on the north and south,

washing away both approaches, if they may be so called, leaving a deep chasm of considerable width in the street on the town side of the culvert. On February 4, following, one Mutsch, a truck driver by occupation, borrowed his employer's truck for the purpose of making a trip from Seattle to Issaquah, and by his invitation two of his friends, the respondent and one Craig, accompanied him. They arrived at Issaquah about eight o'clock in the evening of that day, made some inquiries for the friend whom the driver of the truck wished to see, and failing to find him, they started north on the street leading to the culvert which has been described, for the purpose of finding a friend of the respondent whom he wished to see, respondent, assuming to give general directions as to his friend's living a few blocks out on that street, but not otherwise assuming any control over the operation of the truck. The truck had one seat; the driver sat at the wheel on the left, respondent sat beside him on his right, and Craig, the third member of the party, sat partly on respondent's lap, supporting himself by one foot on the running board. None of them knew of the washout.

As they proceeded north at a rate of speed which is sharply in dispute, the driver saw the tail light of an automobile parked on the right-hand side of the street, and swung his truck to the left in order to safely clear it. Immediately thereafter he saw the chasm caused by the washout before him, he cried out, applied his brakes, and the truck catapulted into the chasm, and against the concrete bulkhead. Craig, having the advantage of position, jumped and apparently received lesser injuries. Neither respondent nor the driver had time to move, and both were carried down with the truck and very seriously injured.

The evidence as to the maintenance of a barricade and warning lights is highly conflicting, and it must suffice to say that there was ample evidence to take the case to the jury upon these questions.

The first and perhaps most important question is raised by the county, which contends that some one of its several appropriate motions should have been sustained upon the ground that no duty rested upon it to repair or maintain the street where the accident occurred, or guard it until it should be repaired, because the defects which caused the injury were wholly within the town limits. As a basis for this contention, it cites 13 R. C. L., where, treating of highways, the rule is laid down, in § 145, that county authorities have no power to control city streets except when the statute so provides, such control being vested exclusively in the city. Our attention is likewise called to Rem. Comp. Stat., § 4056 [P. C. § 1664], enacted in territorial days, and § 9175, subd. 4 [P. C. § 837], enacted by the first state legislature; the first of which gives to county commissioners the power to lay out, alter, or discontinue roads and highways, except when within the limits of incorporated cities and towns, "where by the terms of the acts of incorporation jurisdiction . . . . is vested in the corporate authorities thereof." And the second of which gives to towns and cities of the fourth class (to which Issaquah belongs) authority

"to establish, lay out, alter, widen, extend, keep open, improve and repair streets, sidewalks, alleys, squares and other public highways and places within the town, . . . . and generally to manage and control all such highways and places."

But these statutes do not reach, nor attempt to govern, the question of a bridge on a boundary line.

The evidence in this case speaks of the stream as the boundary line, but there is no attempt to show whether the south bank, the north bank, or the thread of the stream forms the actual line. Nor do we think that material. The bridge was the connecting link between the two jurisdictions. Without it, the usefulness of both the street and the county road as a means of communication would be destroyed. With it, a highway is established leading into the town, and a street created leading out of the town, which we must assume was the purpose of both the county and the town authorities.

Nor does the act of 1913, ch. 151, p. 476 [Rem. Comp. Stat., § 6413], as amended in 1915, ch. 171, p. 545, nor the act, Laws of 1913, ch. 25, p. 62 [Rem. Comp. Stat., § 5592], under which King county financed the building of this particular bridge, offer any aid. We must look elsewhere for the law to be applied, but before we discuss the law other facts should be noted.

Admittedly the county built the bridge. Without serious denial, it appears that the county assumed the entire burden of keeping the bridge in repair. Not only so, but there is evidence in the case from which the jury could well have found that the county built, widened, and maintained the street south of the bridge, and within the town limits; and beyond any question, after the washout occurred, the regular employees of the county, whether authorized or not, assumed to and did erect barriers, provided and displayed lights thereon at night, and without any showing as to consultation or cooperation with the town authorities, did all that was done to protect the traveling public.

These facts bring the case within the holding in *Barr v. Cowlitz County*, 127 Wash. 14, 220 Pac. 6, and

our decision as to the liability of the county may safely
rest on that authority alone.   But if any of our con-
clusions as to the facts are thought to be unwarranted
or unsound, then our decision may rest upon the wider
rule laid down in *Trebowoski v. Town of Ringle,* 165
Wis. 637, 163 N. W. 165, 8 A. L. R. 1271, and the au-
thorities collated and discussed in the exhaustive note
following.   That rule is that, where a right of action
exists by statute against a municipality for damages
growing out of defective roads or streets, as is the case
in this state, then, if the defect be at the boundary line,
both municipalities are liable.   We think this rule logi-
cal, fair, and the only just rule to be applied in such
cases.   The language of the Wisconsin court clearly
demonstrates the soundness of the rule:

"Is the language of the statute, 'in any town,' etc.,
as to the place of a defective highway causing injury
to a person using the same, and the language as to
service of notice on the municipality against which the
damage is claimed, stating 'where such damage oc-
curred,' confined to events characterized by a defect
at a point in a highway wholly within one municipal-
ity?   Counsel for appellants contend for the affirma-
tive.   If that should prevail, the result would be that
the statute leaves a person remediless who suffers
damage from a defective highway at a point which is
common to two towns.   That the legislature did not
intend such an absurdity seems quite clear.   By a fa-
miliar principle, if the language of the written law can
reasonably be read so as to avoid such absurd result,
it should be presumed that it was intended to be so
read, and effect be given thereto accordingly.

"It is considered that a point which is common to
two towns, as the boundary line between them, in a
proper sense, may be said to be within either or both,
and so that the words of the statute, 'in any town,'
apply to such point as regards either municipality.   It
follows that a defective highway at such a point an-
swers to the call of the statute for 'any town,' as ap-

plied to each or both of the municipalities, and that both are in duty bound to maintain the highway at such point in a reasonably safe condition for public travel. Failure to do so is a joint and several liability, in case of damage to anyone in his person or property, happening thereby.''

The town of Issaquah likewise contends that, because of the showing that King county built, maintained, guarded, and controlled the bridge and street at all times, a nonsuit should have been granted as to it. While the showing is such perhaps as to morally excuse the town from taking any steps to protect the traveling public, yet we cannot hold that it is legally excused. Its duties in the premises were of the kind usually held to be non-delegable and it may not escape liability upon the ground that it trusted to the county to perform the duties which the law casts upon both.

More than fifty other assignments of error are made, many of which are urged seriously, but we cannot consider them in detail without unduly extending this opinion. As briefly as may be, we will mention a few which seem of most importance.

The matter of ordering a view by the jury of the place where the accident occurred is, by § 344, Rem. Comp. Stat. [P. C. § 8509], lodged in the discretion of the court, and we are not convinced that the trial court abused its discretion in this respect.

The trial court properly disposed of the objectionable portions of the opening statement to the jury by respondent's counsel, by the statement then made that anything said by counsel was not to be regarded as evidence. The attempted inquiry as to the injury and the effect on the memory occasioned to the witness Mutsch in the same accident was not improper since his apparent lack of memory was before the jury. Nor do we find any error in the ruling of the court upon

the admission and rejection of testimony, and it would be profitless to attempt to discuss each error assigned in this respect.

On motion of King county at the beginning of the trial, an order was made excluding the witnesses. Later, in the course of the trial, a witness was called on behalf of the county. While being interrogated, it appeared that he had previously attended the trial and been present in the courtroom during the proceedings. Counsel for respondent then moved to strike his testimony. In answer to the court's question, the witness disclaimed all knowledge of the rule; and counsel for the county, apparently representing counsel for the town as well, courteously stated to the court that it was not known until that day that this person would be a witness, or would be called as such. The motion to strike the testimony was not opposed, but the granting of the motion is now assigned as error. The real question is not whether the appellant was entitled to have the evidence stay in, but rather, is the appellant in a position to now claim error, since no exception was taken to the ruling. The cases cited by appellant go no further than to announce the familiar rule that, when an objection is interposed to a question propounded to a witness, and the ruling made thereon, no exception is required. That is not the question here. In this instance, appellant did not oppose respondent's motion to strike the testimony in any manner, and must be held to have acquiesced in the ruling, and consequently cannot base error thereon.

Various assignments are based upon the instructions given to the jury, and to the refusal of the court to give requested instructions; but after a careful examination of the instructions given and refused, we are of the opinion that those given and excepted to were

proper, while those refused were either not justified under the facts of the case or the substance of them was given in language as favorable, and in one instance more favorable to appellants than that of those refused. The instructions, taken all together, were clear and comprehensive, fair to both sides, and properly stated the law.

As to the assignments of error relating to the matters of negligence and contributory negligence, we find that the evidence was conflicting and sufficient to carry this case to the jury, and that there was ample evidence which the jury was at liberty to believe to justify and sustain the verdict.

Some claim is made that the verdict is excessive, but we cannot so hold. Respondent, who was thirty-four years of age, was terribly bruised and mangled, many of his bones being broken. He suffered permanent disfigurement about the face, including his nose, mouth and jaws, and the jury was justified in finding that he was permanently disabled.

We find no reversible error in the case, and the judgment appealed from is affirmed.

MAIN, C. J., MACKINTOSH, HOLCOMB, PEMBERTON, PARKER, and FULLERTON, JJ., concur.