[No. 22964.   Depàrtment One.   May 7, 1931.]

JOE ALIVERTI *et al., Respondents,* V. THE CITY OF WALLA WALLA, *Appellant.*[1]

¹Reported in 298 Pac. 698.

*Herbert Ringhoffer, W. G. Coleman,* and *John F. Watson,* for appellant.

*Sharpstein & Smith,* for respondents.

HOLCOMB, J.—The city of Walla Walla appeals from judgments upon verdicts against it in five actions, which, being similar, were consolidated for trial and appeal.

The suits were brought to recover for alleged depreciation in value of several tracts of land, by reason of the city's maintenance and operation of a sewage disposal plant in the vicinity of the lands.

The plant is located on a ten-acre tract of land, acquired by the city for the purpose, about three-fourths of a mile outside the city limits to the west. Respondents' lands, owned by them before the con-

struction of the plant, lie to the south and southeast of the plant, within distances varying from a few yards to about sixteen hundred feet. The lands are used chiefly for market gardening, truck farming, and berry growing, and for sites for dwellings and other structures used by the owners or tenants. Other lands in the vicinity are of the same general character.

The plant was completed and put in operation in the spring of 1929. On October 29, 1929, the several groups of respondents presented claims to the city, each group asserting that they had suffered damages to their property from corruption of the air over and above their lands and buildings by noxious, foul, and offensive fumes and odors emitted by the sewage disposal plant, and from visitations of insects that were attracted to and bred profusely at the plant. The claims were not allowed and in due course the actions were brought, alleging damages as in the claims, and seeking recovery for depreciation in the value of the several properties. Respondents also alleged that the plant was intended to be a permanent one, and that the site was too restricted in area to keep it from being offensive beyond its bounds, and that it would continue to be as offensive as it had been, and that the damages to their lands would be permanent.

The answers admitted the city's ownership and operation of the plant, and its intention to continue to operate it as theretofore, but denied its offensiveness and all other elements of injury. The answers also alleged, and the replies admitted, that the plant had been and would be operated in a careful manner, and that it was as good a plant as could be devised for the purpose.

On the trial, the evidence was conflicting as to the nature and degree of offensiveness of the fumes and odors from the plant, the frequency and conditions of

their emission, the distance they were carried in the air, and their effect upon different persons and upon the neighborhood as a place in which to live or work. The same is true as to the attraction and breeding of insects, their escape from the plant, and the distance away from the plant they were found in annoying numbers. There was conflict, also, as to land values and the elements of values, both present and prospective, and as to the degree of depreciation, if any, by reason of odors and insects from the plant. These, of course, were all matters for the jury, and were determined in favor of respondents, to the extent that the verdicts were against the city in the aggregate of $19,225 upon claims totalling $74,500. The city does not contend that there was not sufficient evidence to go to the jury on the question of liability, nor that the verdicts were excessive if any legal liability existed.

Motions for judgment notwithstanding the verdicts and for a new trial were denied.

The chief question on this appeal arises upon the city's contention that

"The damages should have been limited to those accruing between the date of trial and thirty days prior to the filing of claims against the city, because (a) the plaintiffs elected to present claims and base their several actions thereon, and (b) the damages for which plaintiffs sue are not within the provisions of Art. I, Sec. 16 of our State Constitution providing that 'no private property shall be taken or damaged for public or private use without just compensation' being paid therefor."

The first reason thus assigned is not grounded on fact, as we understand the claims and the complaints. The election, if any, was just the reverse of what the city here assumes. Each claim set out the claimants' ownership of certain land, that they had suffered damage to it by reason of the fumes, odors,

etc., from the plant, that the damage had been continuous during the preceding six months and existed at the date of the claim,

" . . . and that claimants have suffered damage and depreciation to their property and the improvements thereon, on account thereof, and the market value of said property has been reduced and depreciated in the sum of $................, and that said damage is permanent, and that on account thereof, the said claimants present a claim against the City of Walla Walla for the sum of $................."

Negligence is not charged. Clearly, the claims were not for compensation for a temporary interference with the enjoyment of the property, but for total, permanent damages.

The several complaints were framed upon the same theory, without any allegations of negligence; for, while there are allegations that the site of the plant was of insufficient area and "at an improper place," we regard this as merely another way of saying that the offensiveness of the plant extended beyond the limits of the site, and that the character and use of the surrounding lands were such that the owners were thereby permanently injured. That the city understood the actions to be for permanent injury, is shown by its filing, on the second day of the trial, a proposed instruction, later given by the court, reading:

"If you find from the evidence that there has been no depreciation of the market value of the lands and premises of the plaintiffs by reason of the matters alleged in their complaint, then such plaintiffs would not be entitled to recover any damages in any of these actions."

The second reason given by the city for limiting the damages, namely, that they are not within the provisions of Art. I, § 16, of the constitution, is met by our decisions in *Jacobs v. Seattle,* 93 Wash. 171, 160

Pac. 299, L. R. A. 1917B 329; and *Southworth v. Seattle,* 145 Wash. 138, 259 Pac. 26. We held in the *Jacobs* case that the maintenance and operation by a city of an incinerator for the burning of garbage on land adjacent to that of a private owner, and its operation so as to depreciate the value of his land and render it a menace to the health of himself and family, constitutes a damaging of private property for a public use, for which he is entitled to compensation under Art. I, § 16, of the constitution. The *Southworth* case concerned a sewage disposal plant, and in its application of the law on this point followed the *Jacobs* case. See, also, *Great Northern Railway Co. v. State,* 102 Wash. 348, 173 Pac. 40; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 505, 255 Pac. 645; and *Clark v. Seattle,* 156 Wash. 319, 324, 287 Pac. 29. There is nothing contrary to this in *Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, as urged by the city.

The city excepted to instruction No. 3 given by the court, apparently without request of either the respondents or the city:

"3. I instruct you that under the statutes of this state a nuisance is defined as follows:

"Nuisance consists of unlawfully doing an act or omitting to perform an act, which act or omission either annoys, injures, or endangers the comfort, repose, health or safety of others; or in any way renders other persons insecure in life or in the use of property.

"Our statute further provides: Whatever is injurious to health or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and is subject for an action for damages.

"It is also provided that it is a nuisance to continue or use any building or other place for the exercise of any trade, employment or manufacture which by oc-

casioning obnoxious exhalations, offensive smells or otherwise is offensive or dangerous to the health of individuals or the public.

"It is further provided by the constitution of the state that no private property shall be taken or damaged for public or private use without just compensation being paid therefor. "

The parts of this instruction relating to nuisance were needless, and probably ought not have been given, in view of Rem. Comp. Stat., § 9488, authorizing cities to maintain sewage disposal plants, and § 9916, which declares that "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." However, we regard the instruction as harmless, as we held in *Southworth v. Seattle, supra,* where a similar instruction had been given. In two other instructions, one given at the city's request and one requested by respondents, the court informed the jury clearly that the city had a lawful right to locate, maintain, and operate its sewage disposal plant where it did. The instruction complained of did not introduce a new issue, as the city suggests.

Error is assigned on the giving of three other instructions, but we find upon careful consideration of them that they fairly stated the law applicable to the cases. Apparently, the city has supported its criticism by finding in two of the instructions meanings that are not there, and by overlooking in another an implication that plainly and necessarily is there. An instruction as to adaptation for certain profitable purposes conformed to our decisions in *Ham, Yearsley & Ryrie v. Northern Pacific R. Co.,* 107 Wash. 378, 181 Pac. 898, and texts and cases therein cited.

The city has assigned as error that the court allowed a trial by jury, even though respondents had not served or filed a demand for a jury, and had not

494

paid the jury fee until the day after the setting of the case for trial. *Davis v. Falconer,* 159 Wash. 230, 292 Pac. 424, with the cases therein cited, determines this question against the city's contention.

A view by the jury of the sewage disposal plant and of the lands of the respondents was not allowed by the court, as requested by the city at the close of respondents' cases, of which the city complains as error. Under the statute, Rem. Comp. Stat., § 344, the allowance of a view of the premises by the jury is within the discretion of the trial judge. We have consistently so held. *Jordan v. Spokane, Portland & Seattle R. Co.,* 109 Wash. 476, 186 Pac. 875; *Finn v. Bremerton,* 118 Wash. 381, 203 Pac. 971; *Vizzaro v. King County,* 130 Wash. 398, 227 Pac. 497. The record discloses no ground for disturbing his decision. Nor is it material that the jury itself, after it had deliberated for a time, requested a view.

In the forenoon of the day following the submission of the case to the jury, they were brought into court before Judge Sharpstein, who had not tried the case, by the bailiff, and the following colloquy took place:

"THE COURT: (Judge Sharpstein) Members of the jury, have you agreed upon a verdict? JUROR: We have not. THE COURT: I understand from the bailiff that the foreman of the jury has said that you demand the right to see these premises. FOREMAN OF JURY: We did demand that right, but we have talked it over and figure that we do not want to see it now. THE COURT: What? FOREMAN: We talked it over a little more and made up our minds we will not go. THE COURT: Then you do not want to go? JUROR: No. THE COURT: I wanted to get the straight of it. In view of the fact that I did not try the case I would not send you unless both attorneys agreed to it. I wanted to find out what your attitude in the matter was. MR. SMITH: Do I understand the jury does not demand

that right? THE COURT: That is the way I understood it. JUROR LINFESTY: We have agreed in two of the cases and I do not think we should go and look at it now, for that reason.''

Upon this, the city bases a charge of misconduct on the part of the court and respondents' attorney, Mr. Smith. We can see no substantial ground for the assertion that the jury would infer that the city feared a view of the plant, from what occurred as recited above.

It is claimed in the city's brief that one of counsel for respondents, in argument to the jury, made statements of fact not supported by the evidence. If such misconduct occurred, there is no sufficient record of it before us, nor any record of an exception or request to the trial court to correct the mistake at the time.

The city attempted to show by an affidavit of one of its attorneys, in support of its motion for a new trial, that the bailiff in charge of the jury had informed them that their request for a view of the premises made during their deliberations was opposed by the city. The motion was served and filed on June 30, 1930, but the affidavit was not made until July 15, 1930, which was too late, unless an extension of time was allowed by the court. Rem. Comp. Stat., § 402. No extension of time is shown by the record.

Moreover, the affidavit simply makes the bald statement that ''the bailiff in charge of the jury thereafter made known to them that it was the city which was now objecting.'' It cannot be assumed that the affiant was present and heard this communication made, or that he had his information in any other way than by hearsay. Obviously, such a showing would have been incompetent even if made in due time. *State v. Dalton,* 158 Wash. 144, 290 Pac. 989.

496

The city contends that the court erred in excluding evidence as to conditions in the neighborhood of these properties prior to the operation of the sewage disposal plant. Our attention is not called to any offer of such evidence, and we can find none, unless it was by one question put to one witness to which an objection was sustained; but this question related to conditions at a place called Gardena, produced by the use in irrigation of water from Mill creek that contained raw sewage. How far Gardena is from the properties here involved does not appear, but it does appear that the conditions at Gardena, to which the question related, were not those that prevailed in the neighborhood of these properties prior to the construction of the city's plant, or at any time.

Finding no prejudicial error, the judgments are affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MAIN, JJ., concur.