## Doban v. Commonwealth

*Oliver N. Hormell*, for petitioners.
*Davis G. Yohe*, for Commonwealth.

McCUNE, J., May 23, 1967.—In November of 1962, the Lane-Bane high level bridge opened for traffic over the Monongahela River at Brownsville. Petitioners own a house and lot, beneath and to the side of the bridge, located outside of the strip of land which the Commonwealth condemned for construction. We understand that all land directly beneath the bridge was condemned. Petitioners, contending that water, slush, cinders and solid objects drop from the bridge onto

their house and lot, filed a petition for the appointment of viewers. The Commonwealth asks that the petition be dismissed because there has been no "taking" of which this court has jurisdiction. The Commonwealth contends that if petitioners have any remedy, it should sound in tort and should be brought in Commonwealth court. The petitioners rejoin that, although no declaration of taking was ever filed, there has, in fact, been a "taking" because the property has, in fact, been injured and destroyed.

We must decide whether there has been a "taking" of "property" in the sense that eminent domain has been exercised.

The problem raised here has given courts much difficulty since Richards v. Washington Terminal Co., 223 U. S. 546 (1914). Richards owned residential land along a railroad near a railroad tunnel. He contended his land had been taken because he could not enjoy it. Not only did smoke and cinders make life miserable but a concentrated blast of smoke, dust and cinders emitted from the mouth of the tunnel when a train passed through. As to the ordinary smoke and cinders, the court denied compensation, because this harm was of the kind suffered by all persons along the track but as to the concentrated blast of dust, the court held that compensation was payable because this amounted to a condemnation of an interest in enjoyment.

The Richards case is cited for the proposition that there is a "taking" when there is a *special and peculiar* interference with enjoyment. It gave rise to the phrase "condemnation by nuisance" discussed at length in the Dickinson Law Review for the Winter of 1967, vol. 71, no. 2, page 207. This article also covers the development of the law of "inverse condemnation" further discussed in the 1967 issue of the Institute on Eminent Domain, page 213, under the heading Current Trends

and New Decisions in Eminent Domain. See also 2 Nichols, Eminent Domain §6.1 (ch VI).

It is apparent that the law has developed in many jurisdictions so that "taking" is not confined to a physical invasion of property voluntarily carried out by the sovereign nor does "property" mean land or sticks or bricks or mortar. Compensation has been allowed for injury to riparian rights from pollution, for loss of lateral support and for air pollution. See, for example, Donaldson v. City of Bismark, 71 N. Dak. 592, 3 N. W. 2d 808 (1942), where smoke and gas from a city dump was involved, or Aliverti v. City of Walla Walla, 162 Wash. 487, 298 Pac. 698 (1931), where odor from a sewage disposal plant was found to be condemnation by nuisance.

It should be noted, however, that the language of the Constitution under which the cases arise has, to some extent, been controlling. In 26 States, compensation is allowed for "taking or damaging" property. Although the cases widely extending the concepts of "taking" and "property" have not been confined to States where compensation is allowed for damage, as well as for taking, the general effect of having "damage" language in a Constitution has been to make it easier for the court to allow compensation for non-physical interferences. See Dickinson Law Review, supra.

In Pennsylvania prior to the Eminent Domain Code of June 22, 1964, P. L. 84, consequential damages were not recoverable from the Commonwealth, in the absence of a statute awarding them, but they were recoverable from municipal corporations and other corporations having the power of eminent domain under article XVI, sec. 8, of the Constitution of Pennsylvania which required compensation for property *taken, injured* or *destroyed* (Italics supplied). See McGrady Case, 399

164

Pa. 586 (1960). The Commonwealth was not liable for consequential damage, because the Commonwealth derives its powers from article I, sec. 10, which merely states that the Commonwealth may not *take* property without just compensation. See Heil v. Allegheny County, 330 Pa. 449 (1938).

Consequential damages are those arising where property is not actually taken or entered but where an injury to the property occurs as the natural result of an act lawfully done by the condemnor: Puloka v. Commonwealth, 323 Pa. 36 (1936).

In 1964, the Eminent Domain Code provided that the Commonwealth should be liable for damages to property, (a) resulting from change of grade, (b) resulting from interference with access and (c) from injury to surface support whether or not property was actually taken. Thus, the Eminent Domain Code recognized the trend of the law and relaxed the rule which had protected the Commonwealth since 1874 and did allow property owners some of the protection other States had extended for many years.

The code did not go so far as to extend compensation for the type of consequential damage in the case at bar. The damage here results from water and debris dropping off of a bridge, no change of grade, no access, no surface support is involved, and it is our opinion that the law of Pennsylvania will not extend far enough to fit petitioners' claim into the legal concept of condemnation. It is, no doubt, a nuisance with which petitioners are faced but in Pennsylvania there has been no "taking" of any "property".

In a recent case, this court permitted experts to say that they considered loss of access as an element of damages in appraising the compensation which should be due Robert E. and Lenora V. Mitchell when a part of their farm and one of three approaches to the farm

were taken from them by the Commonwealth prior to 1964. See Mitchell Condemnation Case, 209 Pa. Superior Ct. 288. The Superior Court disagreed, stating that no consequential damages were to be allowed prior to 1964 and even if they were to be allowed under the code, there would have to be *substantial* (italics is the Superior Court's) impairment of access.

The 1964 code does not apply to the question before us and despite counsel's persuasive argument that petitioners' property rights have been interfered with and that a "taking" has occurred, we are convinced that Pennsylvania will not countenance such an argument. It is, of course, much more practical to adjudicate the rights of the parties within the condemnation framework where viewers can develop the facts, but we are constrained to hold that petitioners' rights sound in tort and not in eminent domain.

ORDER

And now, May 23, 1967, the rule is made absolute and the viewers heretofore appointed are dismissed.