[No. 28325. *En Banc.* September 22, 1941.]

RUSSELL SNAVELY *et al., Appellants,* v. THE CITY OF GOLDENDALE *et al., Respondents.*[1]

[1]Reported in 117 P. (2d) 221.

*Simmons & McCann,* for appellants.

*Thurman E. Ward, F. A. Smith,* and *McEwen & Brooks,* for respondents.

BLAKE, J.—This is an appeal from a judgment dismissing the action, after the entry of orders sustaining demurrers to the complaint. In a single cause of action, plaintiffs seek to recover from the city of Goldendale, its mayor and councilmen, and from the defendants Klein, doing business as Goldendale Meat Company, damages resulting from the pollution of the waters of the Little Klickitat river. In their complaint, plaintiffs allege:

That the stream runs through or near Goldendale; that, riparian to the stream, plaintiffs own property about half a mile below the city, which they, for many years, have used for dairy farming; that the city, within the past ten years, has caused to be discharged into the stream raw sewage; that, within the past three years, the city caused to be constructed a concrete pipe line from its sewage tanks to a point in the stream approximately one-eighth of a mile upstream from plaintiffs' property line, from which pipe line raw sewage is daily discharged in such quantities as to pollute and befoul the water, rendering it unfit for

domestic use and deleterious to health; that defendants Klein maintain and operate a stock and slaughter yard on the banks of the stream within the city limits, from which they have caused and permitted the refuse, blood, and waste from slaughtered animals, and other filth to be drained into the stream, thereby contaminating and polluting the water and rendering it detrimental to health and unfit for domestic use; and that plaintiffs are in doubt and unable to determine, as between the defendant city and the defendants Klein, the extent of redress due from each.

The demurrers were based on several grounds, only two of which call for discussion: (1) That the complaint does not state facts sufficient to constitute a cause of action against the defendant city; (2) that several causes of action have been improperly united.

■ *First.* Whether the complaint states a cause of action against the city depends upon the character of the cause of action set up. If the action sounds in tort, the complaint is defective because it contains no allegation that a claim was presented to the city council in compliance with the requirements of Rem. Rev. Stat., § 9481 [P. C. § 665].

If, however, the cause of action springs from the constitutional guaranty that "No private property shall be taken or damaged for public or private use without just compensation having been first made, . . . " (Const. Art. I, § 16), such an allegation is not essential in the statement of the cause of action. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625; *Fix v. Tacoma,* 171 Wash. 196, 17 P. (2d) 599.

■ While polluting a stream is generally held to be tortious (*Farley v. Crystal Coal & Coke Co.,* 85 W. Va. 595, 102 S. E. 265, 9 A. L. R. 933 and annota-

tion), it may assume the character of a *taking* or *damaging* of property in contemplation of the constitutional guaranty when a municipal corporation does it on such a scale as to create a public nuisance. *West Muncie Strawboard Co. v. Slack,* 164 Ind. 21, 72 N. E. 879; *Valparaiso v. Moffitt,* 12 Ind. App. 250, 39 N. E. 909, 54 Am. St. 522; *Mansfield v. Balliett,* 65 Ohio 451, 63 N. E. 86, 58 L. R. A. 628; *Platt Bros. & Co. v. Waterbury,* 72 Conn. 531, 45 Atl. 154, 48 L. R. A. 691, 77 Am. St. 335; *Winn v. Rutland,* 52 Vt. 481.

Though not dealing with the pollution of streams, there are three of our own cases which hold that damages to private property, resulting from the maintenance of garbage and sewage disposal plants, are recoverable under the constitutional guaranty. *Jacobs v. Seattle,* 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B, 329; *Southworth v. Seattle,* 145 Wash. 138, 259 Pac. 26; *Aliverti v. Walla Walla,* 162 Wash. 487, 298 Pac. 698. In the *Jacobs* case, the court cited, and quoted with approval, the case of *Platt Bros. & Co. v. Waterbury, supra.* Another passage from the latter case is very pertinent to the question now directly under consideration:

"The right to pour into the river surface drainage does not include the right to mix with that drainage noxious substances in such quantities that the river cannot dilute them nor safely carry them off without injury to the property of others. The latter act is, in effect, an appropriation of the bed of the river as an open sewer, and the proposition that it may become lawful by reason of necessity is inconsistent with undoubted axioms of jurisprudence. The appropriation of the river to carry such substances to the property of another, is an invasion of his right of property. When done for a private purpose it is an unjustifiable wrong. *When done for a public purpose it may become justifiable, but only upon payment of compensation for the property thus taken. Public necessity may justify the taking, but cannot justify the taking without compen-*

*sation. It may be necessary for a city to thus mix with its drainage such substances, but it is not necessary to pour such mixture into the river, without purification; indeed the purification is coming to be recognized as a necessity. But however great the necessity may be, it can have no effect on the right to compensation for property taken.* The mandate of the Constitution is intended to express a universally accepted principle of justice, and should receive a construction in accordance with that principle, broad enough to enable the court to protect every person in the rights of property thus secured by fundamental law." (Italics ours.)

Respondents argue, however, that an action for compensation will not lie under the constitutional guaranty unless the right violated could have been established by the municipality in condemnation proceedings. The rule has been so stated in *Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, and *Wong Kee Jun v. Seattle* and *Fix v. Tacoma, supra.* From this premise, it is argued that the city could not acquire the right to pollute the stream by condemnation, because it would create a public nuisance in contemplation of Rem. Rev. Stat., § 9913 [P. C. § 9131-78], subd. 2, which prohibits the depositing of any offal or other offensive matter in any stream. To what extent this argument may be valid, we do not feel called upon to decide at this stage of the litigation.

That municipal corporations do have the right to condemn property rights in performance of their governmental function of disposing of garbage and sewage, is not to be doubted. It is generally recognized by the decisions. *Mitchell Realty* Co. *v. West Allis,* 184 Wis. 352, 199 N. W. 390, 35 A. L. R. 396. The italicized portion of the foregoing quotation from *Platt Bros. & Co. v. Waterbury* cryptically defines the city's rights and obligations when it causes sewage to be discharged in a stream. The disposal of sewage under

any circumstances tends to create a nuisance. To the extent that sewage disposal *necessarily* creates a nuisance, the right of condemnation must be accorded to municipalities. This is implicitly recognized in the decisions of *Jacobs v. Seattle, Southworth v. Seattle,* and *Aliverti v. Walla Walla, supra.*

We hold that the complaint states a cause of action against the city of Goldendale under the provisions of Art. I, § 16, of the constitution.

■ *Second.* The rule is practically universal that *tort-feasors* who, independently, contribute to a common injury cannot be held jointly liable nor joined as parties defendant in the same action where there is no common design or concert of action. By the great weight of authority, the rule is applicable in actions growing out of the pollution of streams. *Farley v. Crystal Coal & Coke Co., supra; Mansfield v. Bristor,* 76 Ohio 270, 81 N. E. 631, 10 L. R. A. (N. S.) 806, 118 Am. St. 852.

Respondents argue that the rule has even greater force where, as in the instant case, causes of action are grounded on different theories—one in tort and the other upon a constitutional right.

[6] With respect to actions for damages resulting from the pollution of streams, however, there is a line of decisions which holds that all those who contribute to the common injury may be joined as defendants in the same action. *West Muncie Strawboard Co. v. Slack* and *Valparaiso v. Moffitt, supra; Booth v. Ratté,* 21 Can. Sup. Ct. 637; *McDaniel v. Cherryvale,* 91 Kan. 40, 136 Pac. 899, 50 L. R. A. (N. S.) 388; *Pickerill v. Louisville,* 125 Ky. 213, 100 S. W. 873.

It seems to us that this is the better rule. The only sound reason for the majority rule is that the liability of those contributing to the injury is several. Some of the decisions applying the minority rule refer to

the liability as being joint and several. To this we cannot agree, for, obviously, it might work great injustice to hold one responsible for the entire injurious effect of the pollution of a stream brought about by himself and others in varying degrees. But the several liability of such *tort-feasors* can be as well determined in one action as in many. Indeed, it seems to us that the extent of responsibility of each of the persons liable may be more accurately and justly determined in an action in which they are all defendants than in actions in which each is a sole defendant.

If this action had been instituted for injunctive relief, respondents concede that they could have been joined as defendants in the same action. Under well-grounded authority, the concession must go further than that—were the action for injunctive relief *and damages,* the chancellor could and would retain jurisdiction to assess and apportion damages among the defendants. *Mitchell Realty Co. v. West Allis, supra.*

 We think the defendants were properly joined in this action, notwithstanding the cause of action against the city arises out of the constitutional right guaranteed by Art. I, § 16, of the constitution, and the cause of action against the Kleins sounds in tort. It is a proper case for invoking Rem. Rev. Stat. (Sup.), § 308-2 [P. C. § 8676-5] (Rule of Practice II, 193 Wash. 40-a), subd. 2, which provides:

"Where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants to the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

Respondents call our attention to the case of *Klein v. Betzold,* 119 Misc. 505, 197 N. Y. Supp. 501, in which, construing an identical provision of the New York civil practice act, the court said:

, "The 'doubt' referred to in said section 213 must be considered to be a fair doubt as to whom plaintiff should look to right a single wrong, and not a doubt as to whether one or several persons have separately wronged plaintiff."

If the statement means what respondents contend it does, we think it unreasonably circumscribes the purpose of the statute. Here, indeed, there are two wrongs, but they result in a single injury. Appellants may well be in doubt as to what extent each wrong-doer is responsible, but they are entitled to be compensated for the entire injury. It seems to us that their rights and respondents' liabilities can be more accurately and justly determined in one action to which they are all parties. As we read the statute (Rem. Rev. Stat. (Sup.), § 308-2, subd. 2), it was designed to provide for just the kind of situation this case presents.

The judgment is reversed, and the cause is remanded with directions to overrule the demurrers.

ALL CONCUR.