[No. 32066.   Department Two.   February 10, 1953.]

IRENE MAAS, *Appellant,* HENRY MAAS, *Plaintiff,* v. C. A. PERKINS *et al., Respondents.*[1]

*Everal Carson* and *William Church,* for appellant.

*McMullen, Snider & McMullen,* for respondents.

[1]Reported in 253 P. (2d) 427.

HAMLEY, J.—This is an action to recover damages and for an injunction because of defendants' alleged trespass and continuing nuisance in permitting oil, sludge, and waste to drain from their properties onto the properties of plaintiffs.

In 1936, while plaintiffs Henry and Irene Maas were husband and wife, they acquired a tract of land about a mile north of the city of Vancouver, in Clark county, Washington. This tract had a frontage of two hundred thirty-one feet on the west side of the Pacific highway. Plaintiffs were divorced in 1947, at which time Henry quitclaimed to Irene the southerly one hundred forty-three feet of this tract, and she quitclaimed to him the remaining northerly eighty-eight feet. A house of frame construction is located on the portion deeded to Mrs. Maas.

The elevation of this land is considerably lower than the highway and land lying immediately east of the highway. Because of this, and because of the high water table on this land and poor drainage facilities, water tends to collect on the southerly portion of Irene Maas' tract during wet weather. It then stands in pools of considerable size and creates a generally swampy condition. Part of the water which thus accumulates comes through a culvert under the highway from land lying to the east. While there is a drainage ditch along the west side of the highway, it has proved ineffective in draining the tract now owned by Irene Maas.

Defendant C. A. Perkins and his wife own a parcel of land on the east side of the highway and slightly to the south of Irene Maas' property. In 1946, Perkins divided this property into four tracts, on one of which he began operating a wholesale petroleum products business under the firm name of Perkins Oil Company. Defendant Rodney Jeffrey was originally a partner in this enterprise, but had no interest in it at the time this action was brought.

The most northerly of Perkins' four tracts was leased to defendant Don Fraser. He is a distributor of Perkins Oil Company products under the firm name of The Don Frazer Company. The next most northerly tract was that utilized

by Perkins Oil Company. The tract next to the south was leased to defendant Orville J. Shenefelt, for the operation of a retail service station. The most southerly tract was leased to defendant George Goodrich, who operated a restaurant.

Shortly after these businesses began operating in 1946 or 1947, plaintiffs noticed oil, sludge, and waste in the west outlet of the culvert, the drainage ditch on the west side of the highway, and on the southerly portion of Irene Maas' land. During extended spells of wet weather, the water which overflowed onto this land would carry this oil and other substances over a rather wide area and within a few feet of her house. There was testimony that the oil and sludge reached a depth of several inches in some places, that it created a noticeable and offensive odor, and that it killed grass and other vegetation. There was also some indication of seepage from the septic tank which serviced three of the business properties on the east side of the highway.

When complaints made to Perkins and Shenefelt proved unavailing, plaintiffs, on July 27, 1950, brought this action. The case was set down for trial before a jury. However, on motion of all defendants, the court withdrew the case from the jury calendar and set it down for trial before the court. At the conclusion of the trial, plaintiffs consented to a dismissal of defendant Goodrich as to both plaintiffs, and a dismissal of all other defendants as to plaintiff Henry Maas. The trial court then dismissed the action with prejudice as to both plaintiffs and all defendants. Plaintiff Irene Maas has appealed, but only as to defendants Perkins, Jeffrey, and Shenefelt. Only the first two of these respondents have appeared in this court.

The first question presented on this appeal is whether the court erred in withdrawing the case from the jury calendar and setting it for trial before the court. In contending that this constituted error, appellant relies upon the italicized portion of Art. I, § 16, of the Washington state constitution, as amended by the ninth amendment. This constitutional provision reads in part as follows:

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . . *which compensation shall be ascertained by a jury,* unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. . . ." (Italics ours.)

▉ Appellant, however, makes no contention that respondents have taken her private property for any public use, or for any private use mentioned in the first sentence of the above-quoted provision. On the contrary, her theory, expressed in the complaint and throughout the trial, was that respondents had committed a trespass upon her property and were responsible for a continuing nuisance. The constitutional provision to which appellant refers therefore has no application in this case.

▉ The complaint contains a prayer for monetary damages, but also includes a prayer for an injunction to abate a nuisance. Where any one of the main issues in an action is equitable in nature, equity takes jurisdiction for all purposes, and there is no right to trial by jury. *Dunlap v. Seattle Nat. Bank,* 93 Wash. 568, 161 Pac. 364; *Brady v. Ford,* 184 Wash. 467, 52 P. (2d) 319. The court did not err in striking this case from the jury calendar.

Appellant next contends that the trial court erred in dismissing the damage feature of the case.

In its oral opinion, the trial court named several reasons why it was dismissing the action, in so far as it related to monetary damages. One of these reasons was that appellant had presented no evidence on the basis of which the trial court could segregate the damage, if any, as between the several defendants.

The evidence as to the source of the oil, sludge, and waste which drained, qr was carried, onto appellant's land, was of two kinds. First, there was the testimony of several witnesses tending to show that one or more of the defendants must have been responsible, but without attempting to fix

or allocate the blame as between the defendants. Evidence of this type included testimony that the nuisance condition did not exist prior to the construction and operation of defendants' respective businesses, but appeared shortly thereafter. There was also testimony to the effect that the oil and sludge had been seen in the culvert and the east side drain which served all defendants. Several witnesses testified that the septic tank which served the business establishments of all defendants except Frazer was sometimes plugged up, and resulted in some seepage to the west side of the highway.

The witnesses who gave testimony of this general character sometimes referred to the source of this nuisance as the Perkins "station," "oil plant," "oil company," or "property." However, it is clear from the substance of their testimony that these terms were usually meant to include several or all of the businesses conducted on Perkins' entire parcel.

Then there was the testimony of several witnesses as to a number of instances in which one or more of the defendants had permitted gasoline or oil to be washed or poured down drains which carried it into the highway culvert. This evidence pointed, for the most part, to the operations of Perkins and Shenefelt. However, the individual incidents were so few in number and spread over such a period of time that they could not be said to be indicative of the general business practice of any defendant.

Appellant produced evidence tending to show that, by reason of the trespass and nuisance complained of, the market value of her property had been decreased in an amount ranging from five thousand to eight thousand dollars. No testimony was presented, however, to the effect that any particular defendant was responsible for any specified amount of monetary damage.

Evidence submitted by respondents tended to show that the property had not been permanently damaged, that all or most of the difficulty had now been corrected, and that all damage could have been avoided, and for the future could

be avoided, by making a fill which would cost from two hundred to three hundred dollars.

■■ In her complaint, appellant alleged that she was in doubt as to the person or persons from whom she was entitled to redress, and for that reason she was joining all of the named defendants. Such procedure is appropriate where, as here, it is alleged that the pollution comes from several independent sources. In such case the liability of those contributing to the injury is several. *Snavely v. Goldendale,* 10 Wn. (2d) 453, 117 P. (2d) 221.

This, however, does not relieve a plaintiff from the burden of proving that a particular defendant, whose liability is several rather than joint, caused damage to plaintiff in a specified amount. The difficulty of making such a showing is readily recognized. Unless it is done, however, the trial court has no basis in the evidence for allocating total damage between a number of severally-liable trespassers, tortfeasors, or creators of a nuisance.

Appellant makes no contention that respondents were jointly liable for all of the damage. In the argument before this court, however, she urges that respondent Perkins, as the owner of the entire tract east of the highway, and the builder and lessor of all facilities used by the three defendant tenants, is liable for the entire damage.

This argument has merit with respect to the damage, if any, which may have resulted from defective construction of the septic tank by Perkins. See the cases cited in 53 A. L. R. 327, 332, annotation. But if any such damage resulted in this case, it was relatively inconsequential and wholly unsegregated.

■ Appellant's evidence as to damage pertains almost entirely to the presence of oil and sludge on her premises. There was no testimony, however, tending to show that this resulted from defective facilities constructed by Perkins. Rather, the showing was that any such damage resulted from the improper use of premises by Perkins and his tenants in pouring or washing oil and sludge into drains which led to the highway culvert. A landlord is not liable for damage

to adjoining landowners resulting from a tenant's improper use of the leased premises, unless such improper use was contemplated by the parties when the lease was executed. *Meloy v. Santa Monica,* 124 Cal. App. 622, 12 P. (2d) 1072; *Swift & Co. v. People's Coal & Oil Co.,* 121 Conn. 579, 186 Atl. 629; *Spellman v. Sherry,* 181 Okla. 174, 72 P. (2d) 793; *Little v. Lynn & Marblehead Real Estate Co.,* 301 Mass. 156, 16 N. E. (2d) 688. No showing was here made that Perkins and his tenants contemplated such improper use of the premises.

The final assignment of error brings into question the dismissal of appellant's suit in so far as the requested injunction is concerned. This question concerns only respondent Perkins. Jeffrey had disassociated himself from the Perkins Oil Company prior to the trial, and both counsel have informed us that Shenefelt no longer operates the service station.

The evidence indicates that, while some traces of oil and sludge remain on appellant's property, any facilities and practices which may have brought about this nuisance have been largely corrected.

The court was therefore warranted in dismissing this aspect of the case. It should be understood, however, that while the dismissal was with prejudice, it is not, with respect to either monetary damages or injunctive relief, *res judicata* as to a future trespass or nuisance of the same character.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.