[No. 34255. Department Two. March 20, 1958.]

MARK A. GETZENDANER *et al.*, *Appellants*, v. UNITED PACIFIC INSURANCE COMPANY *et al.*, *Respondents.*[1]

[1]Reported in 322 P. (2d) 1089.

*Evans, McLaren, Lane, Powell & Beeks,* for appellants.

*Wright, Booth & Beresford* (*Wayne C. Booth,* counsel), for respondent Lake City Sewer District.

*Wright, Booth & Beresford* (*Paul M. Anderson,* counsel), for respondent Valley Construction Company.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for respondent Hoagland-Findlay Engineering Company.

*Carl P. Zapp, Leo A. Anderson, Taylor & Taylor,* and *George T. Nickell,* for respondents Baugh Construction Company, Harold R. Kaeser, and Leiter J. Hockett.

HUNTER, J.—This action was brought by Mark A. Getzendaner and his wife to recover for the alleged damage to their property and the use thereof, during a period when the defendants were constructing a sewage improvement project.

The plaintiffs were the owners of a house and lot on the west shore of Lake Washington. The defendant Lake City Sewer District, which hereinafter will be referred to as the District, is a municipal corporation organized and existing under the laws of the state of Washington. Pursuant to a vote of the people, the District adopted a comprehensive plan for sewage collection and treatment. To place the plan in operation, it was necessary to secure a lot on the shore of Lake Washington. The lot purchased by the District was adjacent to the Getzendaners' property.

In order to complete the project, the District called for bids as required by statute and awarded contracts to Valley Construction Company, Hoagland-Findlay Engineering Company, Baugh Construction Company, Leiter J. Hockett, and Henry Finch, who subcontracted with Harold R. Kaeser. (These contractors, with the exception of Henry Finch, were joined as parties defendant in this action.) Each contract was complete with plans and specifications, and provided in part:

"It is also expressly stipulated that the plans, specifications and other contract documents do not purport to control the method of performing the work, but only the requirements as to the nature of the completed work; the contractor assuming the entire responsibility for methods of performing and installing the work."

On January 8, 1952, the actual construction work was commenced by Valley Construction Company. Thereafter, until completion of the project in 1954, the other contractors

undertook the performance of their contracts as determined by the progression of the over-all plan of construction.

On December 16, 1952 (prior to the time the Baugh Construction Company, Leiter J. Hockett, and Kaeser Company commenced work) plaintiffs wrote a seven-page letter of protest to the District, in which they stated that the construction activities on the District's lot constituted a nuisance, and that, by reason of the various acts of the contractors, their real and personal property had been damaged.

On February 9, 1953, the District and the plaintiffs entered into a "Settlement Agreement," the terms of which provided in part:

"Whereas, claimants heretofore, on December 16, 1952, filed a seven-page protest and demand claiming that the activities carried on on the District's said lot constituted a nuisance at common law and had rendered the Claimant's property uninhabitable for domestic use, and had seriously damaged Claimants, said protest and demand covering other special and general matters of damage; and

" . . .

"Whereas, said Claimants have threatened to seek injunctive relief against the said alleged nuisance,

"Now, THEREFORE, in consideration of the mutual covenants herein the parties agree as follows:

"(1) That in full and complete settlement of any claim of the Claimants against the District *for loss of the rental, use or occupancy value of the said premises as a result of the construction activities of the District,* as aforesaid, both past and those to accrue in the future during the period hereinafter mentioned, the District agrees to pay Claimants the sum of TWELVE HUNDRED DOLLARS ($1200.00) for the period of January 8, 1952, until January 8, 1953, and the District agrees to pay Claimants the sum of ONE HUNDRED DOLLARS ($100.00) per month from the 8th day of January, 1953, while construction work continues, and until completion of the construction work . . .

"(2) This settlement is without prejudice to any other claims for encroachment by contractors or others, damage to personal property and physical damage to real property, . . ." (Italics ours.)

On April 4, 1955, the plaintiffs commenced this action, joining as parties defendant the District and five contrac-

tors hereinbefore named. The complaint stated four causes of action: (1) value of the use and occupation of plaintiffs' premises; (2) damage to realty during defendants' occupation and physical invasion; (3) an alternative cause for treble damages for destruction of trees and shrubs; (4) damage to personal property.

A motion was made to separately state the causes of action, and a demurrer was filed on the ground that several causes of action had been improperly united. As a result thereof, plaintiffs moved to amend their complaint by interlineation, to allege that the defendants and each of them, "acting in concert and with common design," committed the various acts for which they were seeking recovery. The trial court granted plaintiffs' motion to amend and, thereafter, denied defendants' motion and overruled their demurrer.

On the pleadings thus framed, the parties proceeded with the trial of the case to a jury. During the trial, the court asked counsel for the plaintiffs if he was proceeding on the *tort-feasor* theory. In response thereto, the counsel replied:

"It is — well, both; and they were all acting in concert. That is one theory. Another theory is the Lake City Sewer District is the principal and each of the contractors are its agents."

When the plaintiffs sought to introduce testimony to show the damages caused by the different defendants, the court sustained defendants' objection on the ground that such proof would not come within the pleadings. However, the plaintiffs were allowed to make an offer of proof, which was denied. *The plaintiffs made no further motion to amend their pleadings, nor did they move for a voluntary nonsuit prior to the time they completed their case.* (See Rule of Pleading, Practice, and Procedure 4, 34A Wn. (2d) 70.)

At the conclusion of plaintiffs' evidence, the trial court granted defendants' motion to dismiss the first and third causes of action.

Prior to submission of the case to the jury, the plaintiffs requested instructions under which the jury could find

*joint* or *several* liability. The trial court refused to give the proposed instructions, but instructed the jury on the theory of joint liability, based upon the defendants acting in concert and with a common design, and that, unless the jury so found, the verdict must be for the defendants. The jury returned a verdict in favor of all the defendants.

The trial court denied plaintiffs' motion for a new trial and entered judgment in accordance with the jury's verdict, dismissing the action with prejudice. The plaintiffs appeal, seeking a new trial.

Appellants urge that the trial court erred (1) in dismissing their first cause of action at the conclusion of their evidence, (2) in refusing to allow them to prove segregated damages, (3) in giving various instructions on joint liability, (4) in ruling that they could only recover on the theory that all of the respondents were joint *tort-feasors*, and (5) in refusing to grant a new trial.

At the outset, for the purpose of disposing of this appeal in respect to the District, we will consider the only grounds on which its liability could be predicated: (1) acts committed by the District itself; (2) imputed liability by application of the doctrine of *respondeat superior*.

From the record, it is clear that the District itself did not commit any tortious acts, and therefore, if it is to be held liable, it must be under the doctrine of *respondeat superior*. This doctrine is not presumed but must be proved by the person relying thereon. *Hamm v. Camerota*, 48 Wn. (2d) 34, 290 P. (2d) 713 (1955). By express provision in the contract, as previously set out, the district did not have authority to control the method of performing the work, nor does the evidence reveal that they assumed such authority.

Any supervision of the work exercised by the District over the contractors was merely for the purpose of determining whether the work was being performed in accordance with the contract specifications. Such supervision did not change the nature of the relationship of employer

and independent contractor to principal and agent. See *Bill v. Gattavara*, 24 Wn. (2d) 819, 167 P. (2d) 434 (1946).

■ It is the general rule that an employer is not liable for the torts of an independent contractor. (*Bill v. Gattavara, supra.*) Therefore, applying this rule, there is no evidence in the record on which to predicate liability on the part of the District; nevertheless, the appellants appear to have been insistent upon suing all the respondents including the District in one action to avoid the necessity of separate suits.

■ When the respondents interposed their motion to separately state the causes of action and their demurrer on the ground that several causes of action had been improperly united, the appellants were confronted with the general rule announced in the case of *Snavely v. Goldendale*, 10 Wn. (2d) 453, 117 P. (2d) 221 (1941):

"The rule is practically universal that *tort-feasors* who, independently, contribute to a common injury cannot be held jointly liable nor joined as parties defendant in the same action where there is *no common design or concert of action*." (Italics ours.)

To come within this rule, the appellants amended their complaint by interlineation adding the words "acting in concert and with common design." From that time forward, to prevail, proof of this added allegation became a basic and essential element of their case.

■ Having taken the position that respondents were joint *tort-feasors*, the release of the District in the "Settlement Agreement" from any liability for claim of rental, use, or occupancy, released the contractors irrespective of the provision in the last paragraph limiting the release to the District.

In *Pinkham Lbr. Co. v. Woodland State Bank*, 156 Wash. 117, 286 Pac. 95 (1930), we said:

"A release of one joint tort feasor is a release of all, whether the release be partial or in full, whether the amount of the recovery be unliquidated or measured, and whether the release to the one be with the express reservation that it shall not apply to the others."

The trial court properly granted dismissal of the appellants' first cause of action.

In support of their contention that the court erred in refusing to allow proof of segregated damages, and in failing to give their proposed instructions on joint or several liability, the appellants rely on Rule of Pleading, Practice, and Procedure 2(2), 34A Wn. (2d) 69, which provides:

"Where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants to the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

This rule is not of assistance to the apppellants for two reasons:

■ (1) They did not allege that they were in doubt. In the *Goldendale* case, *supra*, plaintiffs alleged in paragraph VIII of their complaint (Tr. 4) that they were in doubt, although this fact was not referred to in our opinion. Subsequently, such pleading was expressly approved in *Maas v. Perkins*, 42 Wn. (2d) 38, 253 P. (2d) 427 (1953).

■ (2) Appellants' allegations that all respondents were acting in concert and with a common design is an assertion that all are liable for the entire amount of damage. This is inconsistent with the above rule, which contemplates one or more of the defendants may be liable for the entire amount or for only a part, or none liable at all.

The appellants further rely on the *Goldendale* case, *supra*, which they assert gives them the right to recover against the respondents jointly or severally. In this case, the court did make an exception to the general rule by allowing a joinder of the defendants, even though they were not acting in concert or with a common design when contributing to a common injury. We held, however, that in such a case the liability would be limited to several liability only. We stated:

"With respect to actions for damages resulting from the pollution of streams, however, there is a line of decisions which holds that all those who contribute to the common

injury may be joined as defendants in the same action. [Cases cited.]

"It seems to us that this is the better rule. The only sound reason for the majority rule is that the liability of those contributing to the injury is several. Some of the decisions applying the minority rule refer to the liability as being joint and several. *To this we cannot agree, for, obviously, it might work great injustice to hold one responsible for the entire injurious effect of the pollution of a stream brought about by himself and others in varying degrees. But the several liability of such tort-feasors can be as well determined in one action as in many. Indeed, it seems to us that the extent of responsibility of each of the persons liable* may be more accurately and justly determined in an action in which they are all defendants than in an action in which each is a sole defendant." (Italics ours.)

This case is clearly distinguishable from the one before us and is not authority for the appellants' position. In the *Goldendale* case, *supra,* the exception recognized was limited to stream pollution cases, and the joinder of defendants therein was permitted solely for the purpose of determining the *extent* of liability of each, and not joint liability, which is contemplated by the pleadings in the instant case.

█ The appellants, having elected to sue on the theory that the respondents "acted in concert and with a common design" to avoid the necessity of separate trials, or of separately stating their causes of action, are bound by that election. Their case stood or fell on their ability to prove this allegation by the preponderance of the evidence. On the basis of the record, it is evident that they failed to sustain this burden. The trial court properly denied appellants' offer of proof of segregated damages, which was inconsistent with their theory of joint liability.

█ In respect to the instructions given and the proposed instructions refused, we are cognizant of the rule that a party is entitled to have his theory of the case presented to the jury by proper instruction if there is any evidence to support the theory. *Owens v. Seattle,* 49 Wn. (2d) 187, 299 P. (2d) 560 (1956). In this case, the trial court properly instructed the jury on the appellants' theory as was presented

by their pleadings and the evidence adduced at the trial. Instructions must be taken as a whole. *Barnes v. Labor Hall Ass'n,* 51 Wn. (2d) 421, 319 P. (2d) 554 (1957); *Ward v. Ticknor,* 49 Wn. (2d) 493, 303 P. (2d) 998 (1956). Reviewing the instructions given with this rule in mind, and considering the evidence in the record, we are satisfied that the jury was adequately instructed on the issues presented.

Finally, appellants contend the trial court erred when it denied their motion for a new trial. A new trial is not a matter of right, and whether a new trial should be granted or denied is within the discretion of the trial court, and this court will not intervene unless there has been a manifest abuse of discretion. *Skov v. MacKenzie-Richardson, Inc.,* 48 Wn. (2d) 710, 296 P. (2d) 521 (1956). In this case, the evidence disclosed that during the entire period of construction the appellants continued to reside on their property and received a total of twenty-six hundred dollars from the District under the "Settlement Agreement" for loss of rental, use or occupancy value of their premises. Further, the appellants framed their pleadings, and the trial court properly restricted the evidence thereto. As heretofore stated, they made no effort to amend or move for a voluntary nonsuit when advised of the court's ruling. They were willing to abide by the outcome of the trial *on their pleadings* and have, therefore, not been prejudiced. From our review of the record in its entirety, we are convinced that there was no abuse of discretion by the trial court when it denied appellants' motion.

The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.