[No. 10677-5-I. Division One. June 6, 1984.]

HILMER A. SIMONSON, *Respondent*, v. HERBERT VEIT,
ET AL, *Appellants*.

*Barney, Weiner, McCain & Rotman, P.S., Jay McCain,*
and *Richard M. Barney, Jr.,* for appellants.

*Driano & Sorensen* and *Nancy L. Sorensen,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *James R. Johnston, Assistant,* amici curiae.

RINGOLD, J.—Defendants Herbert and Marilyn Veit (the Veits) appeal the trial court order granting plaintiff Hilmer Simonson a prescriptive easement across their property and enjoining them from obstructing the easement, arguing that the 10–year period was not met because the State was title owner for part of that time. Because adverse possession may not be asserted against the State, we reverse the trial court decision and dismiss the case.

Simonson lives on lot 16 next to the Veits who occupy lot 17. (See diagram.) Before 1968, lots 1, 2, 3, and 4 were owned by the State of Washington. For a number of years before 1968 an alley used by the neighborhood residents crossed the easterly edge of these lots. In 1968 the Veits bought lot 4 and received a deed for it. They also entered into a contract of sale for lot 3, and received a deed for that lot in 1975. In a 1978 superior court action which was not appealed, the Lombards, who live on lot 18 next to the Veits, acquired a prescriptive easement to use the alley.

The Veits put a gate across the alley to block access. There was disputed testimony over whether Simonson knew of the locked gate. After being prevented from using the alley to reach the parking areas in the rear of the house, Simonson brought this action for a prescriptive easement across lots 3 and 4. Simonson and several neighbors testified that Simonson had used the alley to reach the rear of the house since he moved to the area in 1957. Gas and sewer trucks also used the alley for access. The trial court granted an easement, as indicated on the diagram, and enjoined the Veits from interfering with the easement. The court further directed that the Veits remove a bulkhead that interfered with access to the alley, in violation of a

temporary restraining order.

The Veits make several assignments of error. We need discuss only the dispositive issue of whether the 10–year prescriptive period is met when, for part of that time, title was in the State subject to a sales contract with a private party.

The Veits bought lot 3 in 1968 on a real estate contract with the State. They did not receive title until 1975 when the entire purchase price had been paid. RCW 4.16.020 requires 10 years' adverse use to obtain a prescriptive right of way; and such a right may not be acquired against the State. RCW 4.16.160. The question then is whether contract purchasers from the State can be characterized as the property owners against whom the prescriptive period runs, or whether the State is still the "true owner" against whom the right may not accrue.

### PROCEDURE

Simonson initially raises several procedural barriers to the Veits' appeal. He contends first, that the Veits may not argue that prescriptive rights cannot accrue against the State because this issue was not mentioned in the motion for reconsideration. He states that the notice of appeal was filed within 30 days of the order denying the motion for reconsideration, but not within 30 days of the original judgment. Simonson asserts that review is proper only under RAP 2.2(a) which authorizes review of final orders, and is limited to the issues considered in those final orders.

Second, Simonson argues the Veits are collaterally estopped from raising arguments previously decided in Lombard v. Veit, King County cause 839211 (June 6, 1978).

Third, because the Veits did not assign error to specific findings of fact as required by RAP 10.3(g) and 10.4(c), Simonson contends that challenges to the findings should not be considered. After consideration of Simonson's arguments, we conclude that the Veits may proceed with their appeal.

First, the notice of appeal was timely under RAP 5.2(e)

which provides that "A notice of appeal of orders deciding certain timely posttrial motions . . . must be filed . . . within (1) 30 days after the entry of the order . . ." The motion for reconsideration was heard and denied on July 28, 1981; the notice of appeal was filed the same day.

The Rules of Appellate Procedure do not deal with the effect of a motion for reconsideration on the time for appeal. In federal court the general rule is that "if a motion or petition for a rehearing is properly and seasonably made or presented and entertained by the court, the period limited for instituting appellate proceedings does not begin to run until the motion or petition is disposed of . . ." Annot., *Motion or Petition for Rehearing in Court Below as Affecting Time Within Which Appellate Proceedings Must Be Taken or Instituted,* 10 A.L.R.2d 1075, 1079 (1950). The reasoning behind the rule is that a timely petition for rehearing suspends the finality of the judgment pending that court's further determination on whether the judgment should be modified, Annot., at 1080; *Communist Party v. Whitcomb,* 414 U.S. 441, 38 L. Ed. 2d 635, 94 S. Ct. 656 (1973). A similar analysis was used in *Sitko v. Rowe,* 195 Wash. 81, 79 P.2d 688 (1938), where the court held that the time for a notice of appeal does not begin to run until the entry of an order denying the motion for a new trial. It would serve no purpose to require appellants to file a notice of appeal while a motion for reconsideration or new trial was pending in the court below. The notice of appeal was filed within 30 days of the denial of the motion for reconsideration and properly brings the judgment before us for review.

Second, the Veits are not collaterally estopped from appealing because of the decision in Lombard v. Veit. There is neither identity of issues or of parties as is required for collateral estoppel. *See Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 226, 588 P.2d 725 (1978).

Third, failure to identify specifically the challenged findings of fact as required by RAP 10.3(g) and 10.4(c) may result in the findings being considered as verities on appeal.

*See, e.g., Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983). We need not, however, decide if such a sanction should be imposed because the issue we decide turns on a question of law, not of fact.

### INTEREST OF STATE AS CONTRACT SELLER

Simonson contends that the State retained only a security interest in the property and that the Veits were the true owners of record, so that the prescriptive period was running against the Veits, not against the State. Simonson also argues that the State was merely holding the property in a proprietary capacity, not a governmental capacity, allowing the statute of limitations to run against the State. He claims that there is no reason to apply RCW 4.16.160 because no State rights or interests are involved as this is simply litigation between private parties. *Pacific Northwest Bell Tel. Co. v. Department of Rev.,* 78 Wn.2d 961, 481 P.2d 556 (1971).

The "proprietary–governmental" distinction is not relevant to this appeal. This distinction was developed in cases involving municipalities and counties, which are not excepted from the statute of limitations as is the State, and from earlier cases applying the statute of limitations before it was modified so as to exclude the State. *See, e.g., Commercial Waterway Dist. 1 v. Permanente Cement Co.,* 61 Wn.2d 509, 379 P.2d 178 (1963); *O'Brien v. Wilson,* 51 Wash. 52, 97 P. 1115 (1908). RCW 4.16.160 provides that "there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state . . ." The statute does not distinguish between the proprietary and the governmental functions of the state, and no such distinction has been implied in the case law. *See, e.g., Bowden–Gazzam Co. v. Kent,* 22 Wn.2d 41, 154 P.2d 292 (1944); *Roediger v. Cullen,* 26 Wn.2d 690, 175 P.2d 669 (1946). *Pacific Northwest Bell* concerned the State's acquisition of personalty under the unclaimed property act, not an interest in realty, and does not support

Simonson's position.

Simonson's argument that the Veits were the owners of the property from the time they purchased the land in 1968 also fails. Title remained in the State until the deed was issued in 1975. It has been held that adverse user may not begin until title passes to a private grantee. *Roediger,* at 705 (statute does not run until United States issues patent).

In *Finley v. Jordan,* 8 Wn. App. 607, 508 P.2d 636, *review denied,* 82 Wn.2d 1006 (1973), this court held that the statute of limitations did not begin to run as to a vacated road until the county sold the property to a private party. The court rejected the argument that the litigation did not involve a governmental entity and that the statute should not be invoked for the benefit of private parties, reasoning

> "Adverse possession" is a meaningful legal concept only if legal title can be acquired thereby. Any possession of Jordan or his predecessors in title adverse to Whatcom County was meaningless as against the county, since its title could not be impaired. We hold that possession which is in all other respects adverse, but which cannot result in the acquisition of legal title, is not "adverse possession." Because the county's title was unimpaired, and because it conveyed all the title it had to Finley, it follows that Finley had conveyed to him a title unimpaired by any possession adverse to his predecessor in title, and the statute may begin to run only from the beginning of Finley's ownership.

*Finley,* at 609.

A similar analysis applies to acquisition of a prescriptive easement. *See* Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53, 86 (1960) (may apply adverse possession cases in resolving prescriptive easement issues). Any adverse user by Simonson would be meaningless as long as the State held title to the land. If the Veits had defaulted on their contract, they would never have been the title owners. *See* RCW 79.01.228. The title of the State should not be impaired by allowing the statute to run

while the State is the title owner. Were the rule otherwise, and the purchaser from the State defaulted in the performance of the contract, the State upon forfeiture would recover land encumbered without its consent. In analogous situations, our courts have held that the statute does not begin to run until title passes to the private party. *Bowden–Gazzam Co.; Finley; Roediger.* The Veits became the title holders when they received the Governor's deed in 1975. Simonson therefore did not show adverse use for the requisite 10–year period.

The judgment is reversed and the cause is dismissed.

DURHAM, C.J., and CALLOW, J., concur.

Review denied by Supreme Court September 21, 1984.