[No. 8125-7-III. Division Three. January 14, 1988.]

THE CITY OF BENTON CITY, ET AL, *Respondents,* v. GERALD D. ADRIAN, ET AL, *Appellants.*

*Patrick Walker* and *Cowan, Walker, Jonson & Moore,* for appellants.

*Leland B. Kerr, City Attorney,* for respondent Benton City.

*Dwight Halstead* and *Halstead, Meyer & Knox,* for respondent Kiona Irrigation District.

THOMPSON, A.C.J.—To prevent damage to the plaintiffs' property, a permanent injunction was issued forbidding the defendants from discharging excess irrigation water from their orchards past a certain point. Additionally, Kiona

Irrigation District's claim for damages was dismissed. We reverse in part and remand to the trial court.

Gerald and Joyce Adrian, the W. R. Smith Family, Inc., and Franklin and Kathleen Snyder (the orchard owners) own farm property located in Benton County northwest of the City of Benton City. All three properties, planted in fruit trees, employ the "rill" method of irrigation. This method brings water onto the land at its high points, and allows it to flow through the orchard in "rills" or furrows, with the excess irrigation water running off at the land's low points. Excess runoff is an integral part of rill irrigating. In this case, the excess water, called "tail water", runs off the orchard owners' property in an area bordering Horne Road, a county road adjacent to the City of Benton City. There, the water collects in depressions and a ditch along the road bank, and flows to the county storm drainage culverts along Horne Road.

When the water exits the culverts, it flows onto private undeveloped land owned by Otto Lorz.[1] The water forms a pond just west of 12th Street on the Lorz property. Evidence suggests in years past the water had occasionally flowed into a natural ravine or draw downslope in an easterly direction.

In 1978, property located within the City, east of 12th Street and the Lorz land, was developed into the Boland Addition. A storm sewer drain was installed which collected water from the west side, at 12th Street, and channeled the water to the eastern edge of the addition, somewhat to the south from where it originally would have drained, but in the same draw or natural drainway.

Prior to 1984, there were no apparent problems. However, after that time the irrigation water, collecting on the Lorz property, entered the City's new storm sewer drainage and flowed out just west of 11th Street. It then continued down the undeveloped Karen Street right of way through a

---

[1]Mr. Lorz was not a party and apparently has not objected to discharge of irrigation tail water onto his property.

depression in the Clark property between 11th Street and 9th Street, and fouled a well serving a private residence.

Also, during the summer of 1984, the City became aware the tail water was crossing 9th Street and threatening the City well. The City took action to protect its well, and wrote letters to several farmers, including these orchard owners. In 1984, the water had not yet reached the Kiona Irrigation District's (KID) canal. The water flow ceased at the end of the 1984 irrigation season.

The problem reoccurred during the summer of 1985. The City investigated and determined the leftover tail water coming from the defendants' fields was the source of the problem. The City built a dike between 11th and 9th Streets to prevent damage to its utility manhole. Erosion was becoming more pronounced, and the City sanitary water line was exposed. Also, water flowed into the KID canal, washing silt and sand into it. KID had to hire a backhoe and operator to remove the silt and prevent a potential breach of the dirt bank and flooding of downslope property.

In 1986, the flooding problem again developed, filling a ditch dug by the City on the west side of 9th Street to prevent a washout of the street. The water then flowed past the City's main sanitary water well, and finally cut away the banks of the KID canal, allowing large quantities of silt and sand to enter into it. KID again had to hire a backhoe and clean out the canal, incurring substantial costs. In May 1986, KID filed a damage claim with the City of Benton City for approximately $2,100. The City refused to pay, denying liability.

Thereafter, KID and Benton City started this action, seeking injunctive relief to prevent further flow of the damaging tail water off the orchard owners' property. Additionally, KID sought damages from both the orchard owners and the City for the costs to repair and dredge its canal. The trial court, after hearing testimony and reviewing numerous exhibits, granted a permanent and perpetual injunction restraining the orchard owners from discharging

irrigation water from their property into or upon the City's property, beginning at the 12th Street storm drain. Also, it ordered that if any water did reach the City's property or the KID canal, another injunction would immediately issue enjoining discharge beyond the orchard owners' property line above Horne Road. The court dismissed the claim for damages and KID's claim against the City of Benton City. The orchard owners appeal the injunction, and KID appeals the dismissal of its claim for damages.

First, the orchard owners contend RCW 7.48.300 prevents an injunction in this case. RCW 7.48.305 provides:

> Agricultural activities—Presumed reasonable and not a nuisance—Exception. Notwithstanding any other provision of this chapter, agricultural activities conducted on farmland, if consistent with good agricultural practices and established prior to surrounding nonagricultural activities, are presumed to be reasonable and do not constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety.
>
> If that agricultural activity is undertaken in conformity with federal, state, and local laws and regulations, it is presumed to be good agricultural practice and not adversely affecting the public health and safety.

■ The history of this provision does not indicate the Legislature had in mind the kind of off-site trespass involved in this case. *See* Senate Journal, 46th Legislature (1979), at 514–15. The statute concerns "activities conducted *on* farmland" being presumed reasonable and not a nuisance if "consistent with good agricultural practices". (Italics ours.) However, assuming rill irrigation is reasonable, flooding adjoining property is not what was intended by this nuisance exemption. Sounds, smells, dust, etc., which might interfere with *use and enjoyment* of life and property were mentioned in the legislative history; interference with *possession* of property, by actual destruction through escaping water, was not, and is categorically different. *See generally Bradley v. American Smelting & Ref. Co.,* 104 Wn.2d 677, 709 P.2d 782 (1985). Therefore, the statute does not bar injunctive relief in this case.

Next, the orchard owners contend they have a common law right to use the "natural drainway" adjoining their property to discharge irrigation waste water. The court found the irrigation waste water was artificially introduced under the control of the defendants, and was not naturally occurring surface water which would have been subject to a limited right of discharge into natural drainways, *Trigg v. Timmerman,* 90 Wash. 678, 156 P. 846 (1916); *Patterson v. Bellevue,* 37 Wn. App. 535, 681 P.2d 266 (1984). The orchard owners do not dispute this finding, but argue the characterization of the water should make no difference, although conceding no case has so decided. They argue the rule with regard to artificially collected *surface* water is that it *may* be discharged upon adjoining properties as long as it is not in quantities greater than, or in a manner different from, the natural flow of such water. *Trigg,* at 681–82; *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974); *King Cy. v. Boeing Co.,* 62 Wn.2d 545, 550–51, 384 P.2d 122 (1963); *Burton v. Douglas Cy.,* 14 Wn. App. 151, 154, 539 P.2d 97 (1975). Because their irrigation water has been deposited in a natural drainway for 50 years or more, and has not been increased in volume, they contend it should fall within this rule.

Washington has adopted a rule of negligence with regard to damage resulting from the maintenance, construction, or operation of irrigation works and other "artificially collected" bodies of water. *Holland v. Columbia Irrig. Dist.,* 75 Wn.2d 302, 305, 450 P.2d 488 (1969); *Robillard v. Selah–Moxee Irrig. Dist.,* 54 Wn.2d 582, 343 P.2d 565 (1959). Nevertheless, there is no question of negligence here; it is undisputed that disposal of the excess water via the Horne Road culverts was intentional, not negligent. Hence, the general rule is:

> One who intentionally discharges water which has been brought or accumulated upon his premises by artificial means may be held liable for injury thereby caused to others.

78 Am. Jur. 2d *Waters* § 211, at 658 (1975). The distinctions between natural surface water, the "common enemy", and artificially introduced water, such as irrigation water, have not been abandoned. Thus, the cases the orchard owners cite do not apply, and no other authority can be found for their argument. The court did not err in concluding there is no common law right to discharge artificially collected water in the same manner as naturally occurring surface water.

Third, it is contended the long–term practice of routing excess irrigation water into the "natural drainway" gave rise to a prescriptive right. The orchard owners are generally correct in asserting a right to discharge excess irrigation water onto the land of another may be acquired by prescription. *Brand v. Lienkaemper,* 72 Wash. 547, 130 P. 1147 (1913). In *Brand,* excess irrigation water was discharged through a natural drainway onto adjoining land, making its way eventually to the Yakima River. The discharge continued for the required statutory period with no appreciable change of course, and with the acquiescence and knowledge of the affected landowners. Therefore, it was held prescriptive rights arose and subsequent landowners could not complain.

Here the trial court rejected this argument. Error is assigned to finding of fact 10 that there was no evidence the irrigation tail water ever ran other than in a casual manner beyond 12th Street. The evidence is unclear how far the water ran prior to 1983.

▌ Regardless of how the evidence is construed, title by adverse possession, or an easement by prescription, cannot be acquired to property held by a municipal corporation for public purposes in its governmental capacity. *Commercial Waterway Dist. 1 v. Permanente Cement Co.,* 61 Wn.2d 509, 512, 379 P.2d 178 (1963); *Simonson v. Veit,* 37 Wn. App. 761, 767, 683 P.2d 611 (1984). Nor can a prescriptive right be acquired to a public nuisance. RCW 7.48.190; *Elves v. King Cy.,* 49 Wn.2d 201, 299 P.2d 206 (1956). A public nuisance includes obstructing or encroaching on public

streets and public ways, and threats to the city water supply. RCW 7.48.140. Unchallenged finding of fact 7 states:

> That the discharge irrigation water poses a threat of damage to the sanitary sewer system through silting of the lines and damage to the plant; a threat of substantial erosion to 9th Avenue; by its erosion exposing and threatening the sanitary water system and city wells; and has eroded the canal bank of the Kiona Irrigation Canal and deposited substantial quantities of silt and unregulated irrigation water into the canal.

Thus, it is clear no prescriptive easement can arise over the City's property.

There was evidence the water flowed into the KID canal in 1985 and 1986, but not for the required 10–year period. The court so found in finding of fact 10.

■ The orchard owners respond that their rights were fixed by the acts of their predecessors long before the City acquired its property. However, we do not find sufficient proof of open, notorious, continuous, and uninterrupted adverse use for 10 years prior to the City's acquisition in the mid–1950's, and that the prior owners had knowledge, constructive or actual, of the adverse use. *See Dunbar v. Heinrich*, 95 Wn.2d 20, 22, 622 P.2d 812 (1980). This case is similar to *Downie v. Renton,* 167 Wash. 374, 9 P.2d 372 (1932). There, the court held biannual release of artificially stored waters onto arid wild lands from a municipal water storage reservoir was not open and notorious because the adjoining land was unfenced, unused, and unimproved. The previous owners could not be presumed to have constructive notice of the adverse use. This land was also unfenced, unused, and unimproved during the period the orchard owners allege prescriptive rights arose.

In addition, there is substantial evidence tail water did not go beyond 11th Street prior to the early 1980's. An expert witness testifying for the orchard owners concluded saturation near the subsurface basalt layer in recent years, due to increased irrigation, coupled with other sources,

would cause water to flow farther down the natural drainway today than in years past. This supports the court's conclusion no prescriptive rights were acquired.

▪ The remaining contentions concern whether the injunction in its current form was proper, assuming some form of injunction was justified. The orchard owners first contend the injunction fails to consider adequate legal remedies which are available. They have assigned error to the trial court's finding of fact 13 that "no plain, adequate or speedy remedy at law [was] available to the plaintiffs". They point to RCW 85.06 Drainage Districts and Miscellaneous Drainage Provisions, and RCW 85.08, Diking, Drainage, and Sewerage Improvement Districts, as providing for the proper remedy. While these legislatively authorized procedures could provide an eventual solution to the drainage problems, it would take time. Finding of fact 7, that the discharge of water posed a threat of damage to the sanitary sewer system, a threat of substantial erosion on 9th Street, a threat to the sanitary water system and City wells, and a threat to the KID canal, is unchallenged. These threats, as shown by the evidence, were immediate and continuing. As such, immediate injunctive relief of some sort was the only adequate remedy.

▪ The next question is whether the injunction in its present permanent form is proper since it places the entire burden upon these orchard owners for a community–wide problem, which, it is argued in large part, was contributed to by the City. The decision of a trial court to grant an injunction is discretionary and is unique to the particular facts, circumstances, and equities of each case. *Brown v. Voss,* 105 Wn.2d 366, 372, 715 P.2d 514 (1986); *Lenhoff v. Birch Bay Real Estate, Inc.,* 22 Wn. App. 70, 74, 587 P.2d 1087 (1978). The standard for reviewing such an exercise of discretion is whether it is based on untenable grounds, is manifestly unreasonable, or is arbitrary. *Washington Fed'n of State Employees, Coun. 28 v. State,* 99 Wn.2d 878, 887, 665 P.2d 1337 (1983); *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Lenhoff v. Birch Bay*

*Real Estate, Inc., supra* at 74–75. *Lenhoff* notes this test gives the appellate court greater latitude in reviewing the trial court's ruling than the more restrictive "no reasonable man would take the position" test for abuse of discretion, because of the broad equity power exercised in granting an injunction. *Lenhoff,* at 75 n.1. While giving great weight to the trial court's exercise of discretion, we must look to the "comparative and compelling public or private interest of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other". *State ex rel. Carroll v. Junker, supra* at 26 (quoted in *Lenhoff,* at 75). However, we may not substitute our view of the facts for those properly supported findings of fact of the trial court. *Brown v. Voss,* at 373.

Here, the orchard owners do not object to some form of injunction, but argue it is unreasonable in its current form. They contend the City created the problems with the sewer, well, and the KID canal by diverting the irrigation waste water into the storm sewer system, from what would have been its natural course, and depositing it east of the Boland Addition at 11th Street. They argue the natural drainway, without the storm sewer disruption, absorbed the waste water as it flowed down the natural slope *before* reaching the area below 11th Street. They also point out there is no evidence to support finding of fact 11 that the water would have, in all probability, gotten to the KID canal in any event. They further argue the trial court failed to consider the actions and inaction of the City in structuring an injunction whose burdens fall solely on their shoulders. *See Lenhoff v. Birch Bay Real Estate, Inc., supra* at 75 (quoting *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 603, 508 P.2d 628 (1973)).

While the cases cited to us apply only to surface water, not irrigation water, the record amply supports the orchard owners' contention that in fashioning relief, some provision should have been made for apportioning the burdens imposed by the injunction. We agree the evidence establishes the City shares partial responsibility for the water

reaching beyond 11th Street to the KID canal. No evidence has been directed to this court's attention supporting finding of fact 11 that the water would have reached the canal in any event, even without the Boland Addition and its storm sewer. In fact, in rebutting the prescriptive rights argument, the City presented evidence that waste water did not flow beyond 11th Street until the Boland Addition was built. Finding of fact 11 is not supported by substantial evidence.

Nor is there evidence the City complied with RCW 43.21C.030, requiring an environmental impact statement under the state environmental policy act before approval and platting of the Boland Addition and before construction of the storm sewer system. *See Loveless v. Yantis,* 82 Wn.2d 754, 765–66, 513 P.2d 1023 (1973). Had such review of the Boland Addition been undertaken, the effects of the tail water discharge practices and the increasing drainage problem in the entire basin could have been identified and mitigated prior to installation of the storm sewer system.

It is evident from the court's findings of fact and conclusions of law that it did not consider the City in any way responsible for the problem. In that regard, we hold the court abused its discretion in fashioning relief. The City's apparent negligence and lack of foresight contributed substantially to the drainage problems. We therefore remand and direct the court to include the City of Benton City, as well as the orchard owners, in its equitable resolution of the problem.

We next turn to KID's appeal of the trial court's denial of their claim for damages. KID sought an injunction and/or damages from the City and the orchard owners. The trial court found in all probability waste water would have reached the KID canal without the Boland Addition, and dismissed KID's claim against the City. We have held this finding was not supported by substantial evidence. We have also determined there is substantial evidence the City's

apparent negligence and lack of foresight contributed to the tail water problem. The City, therefore, must share some responsibility for KID's damages.

The trial court refused to award damages based on its view the orchard owners were severally liable, and damages were not sufficiently individualized and traceable to each defendant. KID assigns error to this conclusion. Because we held the City must also bear responsibility for KID's damages, we include it in this analysis. The trial court believed, similar to pollution cases, liability is several, citing *Snavely v. Goldendale,* 10 Wn.2d 453, 117 P.2d 221 (1941). The court denied relief because KID was unable to prove the proportionate contribution of excess irrigation water among the orchard owners. *Snavely* involved pollution of a stream by both the City of Goldendale and a meat packing company. The cause of action was for inverse condemnation. The court noted in such cases liability is several for "it might work great injustice to hold one responsible for the entire injurious effect of the pollution of a stream brought about by himself and others in varying degrees". *Snavely,* at 459. However, there the court was primarily concerned with whether the defendants could be joined in one action. Also, then–existing rules regarding contribution between tortfeasors were quite different than at present, which might explain the court's comment.

*Maas v. Perkins,* 42 Wn.2d 38, 43, 253 P.2d 427 (1953) supports the view that where there is a trespass invasion of plaintiff's property from several nuisance sources, liability is several. There, the Maas property was inundated over a period of time by water, oil sludge and sewage from several properties across the road. The complaint alleged uncertainty as to who was responsible. The court recited the *Snavely* rule concerning pollution from several independent sources. However, again, this comment in *Maas* involved the propriety of joinder, and the court noted Mrs. Maas had made no claim of joint liability.

The *Maas* case was distinguished in *Phennah v. Whalen,*

28 Wn. App. 19, 26–27, 621 P.2d 1304 (1980), *review denied,* 95 Wn.2d 1026 (1981), where the court decided to place the burden of apportioning damages upon those tort-feasors whose acts independently caused some harm to the plaintiff. Additionally, if the harm is indivisible, they are jointly and severally liable for the entire harm. The court noted the trend in Washington was toward adoption of this approach, citing the landmark case of *Summers v. Tice,* 33 Cal. 2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948) and Restatement (Second) of Torts §§ 433B(2), 879 (1965). *See also Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 235, 588 P.2d 1308 (1978).

 We believe the correct rule is that in a case of damage due to flooding involving a nuisance, liability *may* be several.[2] However, if an apportionment is difficult or impossible, the defendants should have the burden of proving their individual contribution, rather than the plaintiff. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 52, at 345–46, 350 (5th ed. 1984). *Prosser* notes the *Maas* case, and the few cases like it denying damages where apportionment is difficult, "are believed no longer to be the law". W. Keeton, D. Dobbs, R. Keeton & D. Owen, at 350 n.50. Where, as here, the injury is indivisible, and apportionment of responsibility almost impossible, the effect will be to make all defendants jointly and severally liable.

We reverse the judgment of the superior court; this case is remanded to that court to (1) revise the injunction pursuant to our holding and instructions, and (2) award damages to KID; the burden of apportionment lies with the orchard owners and the City. KID is also to be awarded its

---

[2]We express no opinion on changes in joint and several liability brought about by the tort reform act of 1986. This action is unaffected by such change, if any. *See* RCW 4.22.070.

costs as provided by CR 54(d) and RCW 4.84.010 and .080.[3]

GREEN and MUNSON, JJ., concur.

Reconsideration denied February 8, 1988.

---

[3]KID has requested "reasonable attorney fees" and has submitted an affidavit pursuant to RAP 18.1. There is no basis for an award of fees, other than the statutory fees and costs noted above.